UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALLYN REYNOLDS,

Plaintiff,

v.

FLUOR INDUSTRIAL SERVICES, INC., d/b/a M&IS SECURITY, FLUOR ENTERPRISES, INC., and LOUIS F. WARD, Individually,

Defendants.

Civil Action No. 05-201T

**DEFENDANTS' EMERGENCY MOTION TO COMPEL THE DEPOSITIONS OF PLAINTIFF AND NON-PARTY WITNESS ESTELLE BOURQUE, AND FOR SANCTIONS**

Defendants Fluor Industrial Services, Inc., f/k/a Maintenance & Industrial Services, Inc., Fluor Enterprises, Inc. (collectively "Fluor"), and Louis F. Ward (jointly "Defendants") submit this emergency motion pursuant to Fed. R. Civ. P. 37(a)(2) and Local Rule 12(a)(1) for an Order compelling the Plaintiff, Allyn Reynolds ("Plaintiff"), and her non-party witness Estelle Bourque f/k/a Estelle O'Connor ("Ms. Bourque") to appear for and complete their depositions on July 17, 2006 and July 19, 2006, respectively. This aspect of the motion is being filed on an emergency basis because discovery is scheduled to close before the motion can be heard in the ordinary course.

In addition, Defendants seek the recovery of the attorney fees they incur in preparing for and completing Plaintiff's deposition in light of Plaintiff's behavior at the two previous unsuccessful attempts to complete her deposition. Finally, Defendants request that the Court enter an Order prohibiting the Plaintiff and Ms. Bourque from testifying at the trial of this matter

should the witnesses fail to appear, cooperate and complete their depositions on the above-noticed dates.

In support of this motion, the Court is respectfully referred to the accompanying memorandum.

FLUOR INDUSTRIAL SERVICES INC.,
F/K/A MAINTENANCE AND INDUSTRIAL SERVICES, INC., FLUOR ENTERPRISES, INC., AND LOUIS F. WARD,
By their attorneys,

John D. Doran /ld

John D. Doran (#6415)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6611 or 276-6625

Timothy P. Van Dyck, *pro hac vice*
Windy L. Rosebush, *pro hac vice*
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 239-0100
Fax: (617) 227-4420

**RULE 37(a)(2)(B) CERTIFICATION**

I, Windy L. Rosebush, Esq., hereby certify that I have made a good faith effort to secure the cooperation of the witnesses prior to filing this Motion to Compel.

Windy L. Rosebush /ld

Windy L. Rosebush, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2006 a true copy of the foregoing document was served by facsimile and first class mail, postage prepaid to:

Sandra A. Lanni, Esq.
33 College Hill Road, Suite 20 D
Warwick, RI 02886

And by FedEx to:

Estelle Bourque
93 Matteson Road
Hope, RI 02831



PRV_821722_1/MPOGUE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALLYN REYNOLDS,<br><br>Plaintiff,<br><br>v.<br><br>FLUOR INDUSTRIAL SERVICES, INC., d/b/a M&IS SECURITY, FLUOR ENTERPRISES, INC., and LOUIS F. WARD, Individually,<br><br>Defendants. | Civil Action No. 05-201T |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' EMERGENCY MOTION TO COMPEL THE DEPOSITIONS OF PLAINTIFF AND NON-PARTY WITNESS ESTELLE BOURQUE, AND FOR SANCTIONS**

Defendants Fluor Industrial Services, Inc., f/k/a Maintenance & Industrial Services, Inc., Fluor Enterprises, Inc. (collectively "Fluor"), and Louis F. Ward (jointly "Defendants") submit this memorandum in support of their emergency motion to compel the depositions of Plaintiff Allyn Reynolds and Non-Party Witness Estelle Bourque, and for sanctions. As shown below, this Court should order the Plaintiff and Ms. Bourque to appear for and complete their depositions on July 17 and July 19, 2006, respectively. In addition, as a sanction for her prior misconduct, the Court should require Plaintiff to pay for the attorney fees Defendants incur to complete her deposition. Finally, the Court should preclude Plaintiff and Ms. Bourque from testifying at trial unless they appear for their depositions as requested herein.

## Introduction

What should be a relatively straightforward discovery process in a simple employment discrimination claim has turned into an extended struggle to obtain the testimony of Plaintiff and

her key witnesses, Ms. Bourque. Plaintiff admits that she was caught sleeping on the job at Fluor and terminated along with her male co-worker (who was also caught sleeping). However, she nonetheless claims that she was discriminated against on the basis of her sex and disability, was sexually harassed by Defendant Louis Ward ("Mr. Ward"), and was retaliated against by the Defendants. Moreover, the Plaintiff has presented numerous untimely allegations by Ms. Bourque against Mr. Ward in order to support her claims that she was sexually harassed.

These allegations notwithstanding, it is uncontested that the Plaintiff was terminated for sleeping on the job – a more than legitimate business reason for terminating a person employed to provide security services, as Ms. Reynolds was.

In support of her claims, Plaintiff drafted and solicited two witness statements signed by Ms. Bourque, a non-party witness who worked for Fluor for eight (8) months in 2002, well before the Plaintiff began working at Fluor in July of 2003. Neither the Plaintiff nor Ms. Bourque have cooperated in their depositions. Both have been abusive to counsel and both have disrupted and discontinued their depositions, without justification.

**A. <u>Deposition of Estelle Bourque.</u>**

Ms. Bourque has signed two witness statements on behalf of the Plaintiff. Plaintiff prepared both of these statements (one hand-written, one type-written) prior to the time she filed her administrative claim, and they were only recently produced in discovery. These statements, attached hereto as **Exhibit A**, contain wild allegations against Mr. Ward. They state, for example, that: Mr. Ward called Ms. Bourque stupid when she did not know the answers to his questions about the job; he told her "he would set [her] up in prositution (sic) just to take care of his friends;" and he had "rap[ed] Vietnamese women while he was [serving in Vietnam]." (Exhibit A). Ms. Bourque goes so far as to allege that Mr. Ward had sex with another female

employee "named Serenity" (no last name) who then killed herself as a result. (Exhibit A; Deposition Transcript, attached hereto as **Exhibit B** ("Depo."), p. 57).

Moreover, testimony given by a non-party witness, Heather McLaughlin, revealed that Ms. Bourque and another woman (whom she could not identify) made multiple efforts (via telephone and in person) sometime in 2002 (before Ms. Reynolds was hired) to solicit Ms. McLaughlin's cooperation in bringing a suit against Mr. Ward. The Defendants have no record of any other suit by Ms. Bourque or any other woman claiming sexual harassment by Mr. Ward prior to the time the Plaintiff filed suit.

Evidence to date establishes that Ms. Bourque has provided active assistance to Plaintiff in prosecuting her claims against the Defendants. In addition to meeting with the Plaintiff several times (once on Ms. Bourque's birthday, and within weeks of Plaintiff's termination), and signing two witness statements, Ms. Bourque has also allowed the Plaintiff's counsel to come into her home to interview her (Depo, p. 13).

For all these reasons, Defendants need to depose Ms. Bourque. To secure her deposition testimony, a duly issued subpoena was served in-hand upon Ms. Bourque by Constable Michael Caires at her home in Scituate, Rhode Island on June 2, 2006, for a deposition to commence on June 20, 2006 at Edwards Angell Palmer & Dodge LLP in Providence, Rhode Island. The subpoena and proof of service are attached hereto as **Exhibit C.** Ms. Bourque acknowledged service of the subpoena by signing a copy of the subpoena and returning it to Constable Caires (Exhibit A). Subsequently, Ms. Bourque contacted counsel for the Defendants and indicated that she could not drive to the deposition from her home because she was on chemotherapy to treat Hepatitis C. Ms. Bourque requested that the parties appear at her residence for the deposition or provide a driver to take her to Providence for the deposition. In order to make it as

easy as possible for Ms. Bourque, Defendants' counsel agreed to travel to Ms. Bourque's home on June 27, 2006 to take her deposition.

In sharp contrast to the full cooperation Ms. Bourque has afforded the Plaintiff, Ms. Bourque utterly refused to cooperate with defense counsel during her deposition. From the outset, Ms. Bourque was hostile. In the very first question of the deposition, which was simply intended to determine the length of time the witness would need to read and sign her deposition transcript, Ms. Bourque made her hostility clear. Defense counsel began the deposition by stating, "Ms. Bourque, how long - -". Before the question could be asked, Ms. Bourque interrupted to correct defense counsel, stating curtly: "Mrs." Then, when defense counsel tried to ask the question again, Ms. Bourque interrupted again. When the full question was finally posed to the witness, she stated: "Well I don't really know how it's going to be. So how can I given an answer to that?" (Depo, pp. 4-5). Similarly, later in the deposition, when Ms. Bourque was asked about her employment history, she made the impromptu disclosure that her children had been molested by their father, and could not work for a period of time as a result. When defense counsel followed up as to the timing of this alleged event, Ms. Bourque had the following response (Depo, p. 42):

**Q. What year was that?**

**A. She was five years old, *so you figure it out*; five years old. (emphasis added)**

In addition, Ms. Bourque repeatedly interrupted defense counsel and at other times simply ignored the question asked to testify as she saw fit, making the deposition, which lasted little more than an hour, very difficult to conduct. (Depo, pp. 4-5, 14, 19, 20, 23-24, 32, 33, 38, 43, 45). She also repeatedly reached across the table where the deposition was being conducted; once to try and take the pen out of defense counsel's hand without asking to do so (apparently

assuming she had to sign the subpoena although she had not been asked to do so and had already signed it), and another time to put her hand on the notebook defense counsel was using to take notes. The deposition was also interrupted several times because of the daily activity of Ms. Bourque's home.

Approximately 50 minutes into the deposition, defense counsel asked Ms. Bourque a question about a change in her shift at Fluor. Ms. Bourque answered the question and then once again launched into a non-responsive accusation against Mr. Ward without a pending question. When defense counsel asked the witness to wait for a question to respond to, the following exchange occurred in which Ms. Bourque began to yell at defense counsel (Depo, pp. 56-58):

> **Q. So before the time you were switched off the first shift, you brought up the fact you wanted to switch shifts; correct?**
>
> **MS. LANNI: Objection.**
>
> **A. Yeah. It was kind of done heatedly, obviously, if you read it. I mean, it's so hideous that this guy got away with this for so long. He would scream --**
>
> **BY MS. ROSEBUSH:**
>
> **Q. Why don't you wait until I have a question for you and answer those. You can't just keep talking on and on.**
>
> **A. I think you're rude -- being rude right now.**
>
> **Q. You might think so. You can't keep talking without any question pending before you.**
>
> **MS. LANNI: I'm going to object to these arguments with the witness who's not a party to this case and who's not represented here. And you keep interrupting her in the middle of what she's saying, and I don't think that's appropriate. I think if you have a problem with what she's saying on the record that you can move to strike it afterward. That's why we reserved those -- the right to ask for comments to be stricken.**
>
> **MS. ROSEBUSH: I haven't once interrupted the witness. It's the witness who's interrupting me every time I ask a question for the record.**

> [Yelling] A. Do I have to go to court for this; because it's over now? I'm not going to go to court. I don't like the way your approach is, you know. Let me tell you exactly what this guy did, what he did to me and what he does to everybody else. He had sex with a girl that used to work there. Then she committed suicide. And you're a woman sitting there right in front of me looking at me in the face like I did something wrong. I did nothing wrong at Clariant. As a matter of fact, everybody that worked there will tell you I was an excellent worker.
>
> BY MS. ROSEBUSH:
>
> Q. That's not the information I have, ma'am. Are you done?
>
> A. I want to be done because I don't feel good.
>
> MS. ROSEBUSH: Are you recording this with audio?
>
> COURT REPORTER: No.
>
> THE WITNESS: They don't know what I have been through with this guy.
>
> MS. LANNI: I understand. But this is a deposition. And I just want you to -- I'm not your attorney. But I want to tell you that because you're under subpoena, which is a court order, that if you stop the deposition -- which, I mean, you can make your own decisions – but the court can order the deposition reconvened at a different time.
>
> THE WITNESS: Go ahead.

At this point, Ms. Bourque *threw the deposition exhibits at defense counsel and refused to continue with her deposition*, even after being warned by *Plaintiff's counsel* that she was under subpoena and that the Court could order her deposition to reconvene at another time (Depo, pp. 58-61). In response, Ms. Bourque made it clear that she would refuse to cooperate in any continuation of her deposition, or testimony at trial:

> MS. ROSEBUSH: Let the record reflect the witness just picked up the exhibits and threw them at me.
>
> THE WITNESS: I tossed them over. I didn't throw them. It didn't hit her. It didn't touch her body. I'm not going to continue because I feel so much animosity coming from the other side of the table. I don't have to testify at this thing anymore. I don't have to go to court and testify. I don't have to do it. I don't feel good, and it's just annoying me. I'm on medicine, and I have a document that states I'm on medicine.
>
> MS. ROSEBUSH: What would you like to do, ma'am?
>
> THE WITNESS: I don't want to continue in this frame.
>
> MS. ROSEBUSH: Do you understand that we will be moving to compel your deposition testimony?

THE WITNESS: What does that mean?

MS. ROSEBUSH: Means I'm going to court. I'm going to tell the judge you would not continue with this deposition. And I'm going to get a court order. Since you've been identified by the plaintiff as a witness in this case and submitted two witness statements that I would like to ask you questions about, I'm going to get a court order requesting the court compel you to come and answer the questions.

THE WITNESS: Not if I'm on chemotherapy. They cannot make me go anywhere to court.

MS. ROSEBUSH: Is it your position that you're not going to answer any more of my questions?

THE WITNESS: I would really, you know -- this is too long for me. I don't want to continue right now.

MS. ROSEBUSH: Ms. Bourque, I had two conversations with you -- did I not -- and offered to postpone the deposition if you weren't feeling good, did I not?

THE WITNESS: When you're not feeling good on chemotherapy, you might not feel good one minute and you might feel good the next minute.

MS. ROSEBUSH: Did I not offer to postpone the deposition if you were not feeling well?

THE WITNESS: Yeah, I (sic) did.

MS. ROSEBUSH: What was your response?

THE WITNESS: I said "I'll be sick now. I'll be sick then. What's the difference?"

MS. ROSEBUSH: You told me to come today, except you told me you were not able to travel. I came to your home to take your deposition today; correct?

THE WITNESS: Uh-huh.

MS. ROSEBUSH: You have to answer verbally for record.

THE WITNESS: Yes.

MS. ROSEBUSH: It's your home. We'll leave. Deposition is suspended pending my application to the court for a court order to compel Ms. Bourque to continue answering my questions.

Defense counsel had no choice but to suspend the deposition at that time.

**B. Deposition of Plaintiff, Allyn Reynolds.**

**The following facts are attested to by Windy L. Rosebush, Esq., counsel for the Defendants, because the transcript of the Plaintiff's deposition is not yet available[1]:**

[1] The court reporter who took the deposition left for a family wedding in Canada and is not scheduled to return until July 17, 2006, the date the Plaintiff's deposition is scheduled to resume.

Plaintiff was given the option of a number of days for her deposition, and chose to proceed on July 6, 2006 beginning at 11:00 a.m. At the start of the deposition, defense counsel told Plaintiff she could take a break if she needed one. To accommodate her physical problems, Plaintiff was told she could take whatever position made her comfortable - sitting, standing or lying on the floor if she preferred.

At approximately 1:00 p.m., defense counsel indicated that there would be a break in the deposition for lunch. Plaintiff responded that the deposition should continue because she did not have that kind of time. Defense counsel therefore agreed to take a limited (20-minute) break to eat lunch. Defense counsel discontinued her lunch as soon as Plaintiff returned to the location of the deposition at approximately 1:30 p.m.

At that point, defense counsel began to ask about Plaintiff's employment history, which the Plaintiff testified included "investigations" and "consultations" for hire and on a *pro bono* basis. Because the time frame of this work overlapped with the time in which the Plaintiff had already applied for Social Security Disability benefits, and was claiming to be totally and permanently disabled from any type of employment, numerous questions were asked of the Plaintiff concerning her work and the identity of the clients for whom she worked. Plaintiff refused to answer several of these questions and had multiple consultations with her counsel. When the questioning continued about the Plaintiff's employment and unemployment history, the Plaintiff began to be agitated. At approximately 3:00 p.m., the Plaintiff suddenly claimed she could not continue because she was in so much pain she could not appropriately participate in the deposition.

Defense counsel agreed to suspend the deposition and resume it on July 11, 2006 at 1:00 p.m., and sought assurances from the Plaintiff that she would be able to complete her deposition,

which she was advised was to take several more hours. Defense counsel specifically advised the Plaintiff that she did not want to agree to resume her deposition at 1:00 p.m. only to have the Plaintiff claim that she could not continue shortly after the deposition resumed. Plaintiff hedged, but stated that she would rest in order to be prepared for her deposition.

On July 11, 2006, Plaintiff arrived approximately thirty (30) minutes late for the resumption of her deposition. When she did arrive, defense counsel was in the lobby. Plaintiff began to flail her arms and was clearly disconcerted. She began yelling, and then sat down on the floor of the lobby. Defense counsel went upstairs and waited until between 1:30 and 1:45 p.m. for Plaintiff to appear. When the deposition finally did begin, the Plaintiff was belligerent. She made comments under her breath about how ridiculous counsel's questions were. In addition, she claimed she could not understand the most basic question – for example, did you have any other permanent employment or other employment after you were terminated from Fluor? Because it was clear that Plaintiff was being combative, defense counsel asked to confer with Plaintiff's counsel to see if she could bring Plaintiff under control. Plaintiff's counsel indicated that the Plaintiff had a bad physical therapy session the day before and did not want to be there. Defense counsel advised Plaintiff's counsel that she did not intend to do battle with the witness for the remainder of her deposition. Plaintiff's counsel spoke with her client privately, and the deposition resumed.

Plaintiff's behavior only deteriorated. At one point, the Plaintiff stormed out of the deposition and failed to return for approximately 20 minutes without explanation. After contacting the reception desk on the floor above the conference room where the deposition was taking place, defense counsel learned that the Plaintiff was in the office reception area speaking on the phone. When Plaintiff returned to the deposition, she was even more uncooperative.

Plaintiff glared and made faces at defense counsel, rather than responding to questions. She also claimed she did not understand a question, but stated that "now" she understood it when the court reporter read it back to her word for word. Later, Plaintiff raised her middle finger at defense counsel under the guise of allegedly demonstrating (without being asked to do so) the finger Mr. Ward allegedly slammed in a desk drawer and fractured. Plaintiff had made no such allegation in her Charge of Discrimination filed with the Rhode Island Commission on Human Rights and the EEOC or her Complaint before this Court.

Plaintiff then became even more agitated. In the middle of defense counsel's examination of conflicting sworn testimony[2], Plaintiff walked to a telephone and called a third party, demanding that "she needed that letter now." When Plaintiff was through with her call at approximately 4:00 p.m., defense counsel asked the Plaintiff whom she had called. Plaintiff testified that she had called her doctor's office to instruct the office to send a facsimile - which she had pre-arranged with her physician the day before - indicating that she could not continue with her deposition. While the parties waited for the letter to arrive, defense counsel offered the Plaintiff the option of taking a 30 minute break, lying down on an office couch, and resuming the deposition at that time if she felt she could do so. Plaintiff indicated that she could not do so. Counsel and the Plaintiff waited for 30 minutes for the letter to arrive via facsimile, but it did not reach the location of the deposition, apparently because of a typographical error in the facsimile number contained on one of Defendants' pleadings. At that point (approximately 4:30 p.m.), the deposition was once again suspended.

---

[2] At approximately this time defense counsel had examined Plaintiff about conflicting sworn testimony about her termination, and was being examined concerning her failure to include Estelle Bourque's name in the Charge of Discrimination. Plaintiff testified that it was because she did not know Ms. Bourque's name, despite having drafted two witness statements for her signature prior to the time the Charge of Discrimination was filed. Defense counsel was attempting to follow up on those questions when Plaintiff discontinued her deposition.

The following day, Plaintiff's counsel faxed the letter to defense counsel, which is attached hereto as **Exhibit D.** The letter, from Dr. Paul Lentrichia, who did not examine the Plaintiff contemporaneously, states that "Allyn Reynolds has a long established history of severe arthritis. Prolonged sitting or standing is not possible."

Since the Plaintiff was not sitting or standing for a prolonged period of time, and had been offered the opportunity to lie down on the floor during the deposition or to take a break, Dr. Lentrichia's letter fails to excuse the Plaintiff's refusal to continue with her deposition in the midst of defense counsel's examination. With the Plaintiff's late arrival and interruptions caused by the Plaintiff, defense counsel estimates that the Plaintiff was, at best, answering questions for no more than two and a half, non-continuous hours. Moreover, nothing in Dr. Lentrichia's letter excuses the inappropriate and abusive behavior the Plaintiff demonstrated to defense counsel during her deposition.

## ARGUMENT AND REQUEST FOR RELIEF

For the reasons set forth above, Defendants request that this Court issue an Order pursuant to Fed. R. Civ. P. 37(a)(2), compelling Ms. Bourque to appear for her deposition at the Providence office of Edwards Angell Palmer & Dodge LLP at 10:00 a.m. on Wednesday, July 19, 2006. Defendants cannot afford to permit any further delays in this deposition.[3] Should Ms. Bourque fail to appear, Defendants request that her testimony be excluded from the trial of this matter, along with any statements, testimony or affidavits by Ms. Bourque.

[3] The discovery deadline in this matter ends on July 31, 2006 and, per Court order, there are no further continuances. Moreover, defense counsel who began Ms. Bourque's deposition is unavailable the entire week of July 24, 2006 for a pre-scheduled series of depositions involving numerous parties in Massachusetts. Defense counsel will also be in Chicago from July 27-30, 2006 for a pre-paid, professional conference.

Similarly, Defendants request an Order requiring the Plaintiff to appear and complete her deposition on July 17, 2006 between 10:00 a.m. and 1:00 p.m.[4] with a half hour for lunch. Defendants further request that the Order instruct the Plaintiff to cooperate with the questioning and refrain from behavior which is abusive or impedes the deposition. In addition, the Defendants request that the Court sanction the Plaintiff by requiring her to pay the Defendants' attorney's fees for preparation of this motion and for the time it takes to appear for and take the Plaintiff's deposition for a third time.

**Conclusion**

For the foregoing reasons, Defendants' Emergency Motion To Compel The Depositions of Plaintiff and Non-Party Witness, Estelle Bourque, and For Sanctions should be granted.

FLUOR INDUSTRIAL SERVICES INC.,
F/K/A MAINTENANCE AND INDUSTRIAL
SERVICES, INC., FLUOR ENTERPRISES,
INC., AND LOUIS F. WARD,
By their attorneys,

John D. Doran /R

John D. Doran (#6415)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6611 or 276-6625

Timothy P. Van Dyck, *pro hac vice*
Windy L. Rosebush, *pro hac vice*
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 239-0100
Fax: (617) 227-4420

[4] This date and time has been agreed to by counsel for the parties.

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2006 a true copy of the foregoing document was served by facsimile and first class mail, postage prepaid to:

Sandra A. Lanni, Esq.
33 College Hill Road, Suite 20 D
Warwick, RI 02886

And by FedEx to:

Estelle Bourque
93 Matteson Road
Hope, RI 02831