UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALLYN REYNOLDS,

Plaintiff

v. Civil Action No. 05-201T

FLUOR INDUSTRIAL SERVICES, INC.,
d/b/a M&IS SECURITY, FLUOR ENTERPRISES, INC.,
and LOUIS F. WARD, Individually,

Defendants

PLAINTIFF'S OBJECTION AND RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO COMPEL THE DEPOSITIONS OF PLAINTIFF AND NON-PARTY WITNESS ESTELE BOURQUE, AND FOR SANCTIONS

Plaintiff, Allyn Reynolds, hereby objects and responds to Defendants' emergency motion as follows:

(1) As to that part of Defendants' motion seeking to compel Plaintiff to appear for and complete her deposition on July 17, 2006, Plaintiff objects on the grounds that (a) the motion is moot because Plaintiff appeared on July 17, 2006, at 9:30 a.m. for the continuation of her deposition and was deposed by Defendants' attorney until past noon; (b) prior to the filing of Defendants' motion Plaintiff had previously appeared for deposition on two separate occasions and had, in fact, suggested that her deposition continue on July 17, 2006, at 10:00 a.m., the time agreed to by all parties. At no time did Plaintiff advise Defendants that she did not intend to appear for deposition at the agreed time on July 17, 2006; and

(c) Defendants have now, by their own calculation as set forth in their Memorandum which accompanied the within motion, deposed Plaintiff in excess of the seven (7) hours, excluding breaks and discussion on the record, allowed by Rule 30(d)(2) of the Federal Rules of Civil Procedure.

(2) As to that part of Defendants' motion seeking the recovery of attorneys' fees incurred in preparing for and completing Plaintiff's deposition, Plaintiff objects on the grounds that (a) Defendants' presumably would have prepared for Plaintiff's deposition in any case, and therefore attorneys' fees incurred to prepare for said deposition are unrelated to any action or inaction on the part of Plaintiff; (b) Plaintiff suffers from several serious medical conditions, and Defendants have bee provided with voluminous medical records relating thereto, which conditions sometimes result in extreme pain and/or fatigue, making it difficult for Plaintiff to continue her deposition for a full day; (c) both on the first and second days of Plaintiff's deposition, when she was unable to proceed further, the parties agreed before leaving the deposition on the date and time that Plaintiff would resume her deposition, and Plaintiff never indicated thereafter that she would not appear at the agreed date and time; (d) on the second day of her deposition, Plaintiff had contacted one of her treating physicians in advance as to her possible need for a letter verifying her medical limitations, and her physician in fact produced such a letter at Plaintiff's request; and (e) attorneys' fees as requested in Defendants' motion are not justified under F.R.C.P. 37(a)(4).

(3) As to that part of Defendants' motion seeking to compel the appearance of a non-party witness, Estelle Bourke, in order to complete her deposition, Plaintiff does

not object to a court order compelling the appearance of the witness for the completion of her deposition. Plaintiff does object, however, to an order prohibiting Estelle Bourke from testifying at trial if her deposition is not completed, and further requests certain guidelines for the completion of said deposition. Plaintiff's grounds for her response are as follows: (a) By information and belief, Estelle Bourke has notified both Plaintiff and Defendants that she is currently undergoing chemotherapy for a serious medical condition, which treatment causes her to feel ill and makes it difficult for her to travel; (b) Plaintiff has no control over Mrs. Bourke, and Mrs. Bourke has no interest in this case; however, Mrs. Bourke's testimony is essential to Plaintiff's proof; (c) Plaintiff speculates that the decision of Mrs. Bourke to terminate her deposition before it was completed is related to her lack of knowledge of deposition procedures and to the tone of cross examination with which the deposition was conducted. With regard to the completion of Mrs. Bourke's deposition, Plaintiff requests an order that will respect this non-party's medical condition and which will offer her the availability of the court's intervention if necessary. If it is possible for Mrs. Bourke to travel to Providence to resume her deposition at the courthouse, Plaintiff prays that this court's order provide for same.

For all of the aforementioned grounds, as well as the grounds set forth in the accompanying memorandum, Plaintiff prays that this Honorable Court dismiss Defendants' motion in part and issue orders for the completion of Estelle Bourke's deposition consistent herewith.

Respectfully submitted,

Plaintiff, Allyn Reynolds,
By and through her attorney,

Sandra A Lanni

Sandra A. Lanni
Bar No. 2147
Suite 20D, 33 College Hill Rd.
Warwick, Rhode Island 02886
401-822-1800
Facsimile: 401-822-1879
E-mail: slanni@collegehill.necoxmail.com

CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2006, a true copy of the within document was served by facsimile and first class mail to:

Windy L. Rosebush and Timothy P. VanDyck
Edwards Angell Palmer & Dodge LLP
111 Huntington Ave.
Boston, MA 02199

By facsimile and hand delivery to:
John D. Doran and Mark Pogue
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

By hand delivery to:
Estelle Bourke
93 Matteson Rd.
Hope, RI 02831

Sandra A Lanni

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALLYN REYNOLDS,

Plaintiff

v. Civil Action No. 05-201T

FLUOR INDUSTRIAL SERVICES, INC.,
d/b/a M&IS SECURITY, FLUOR ENTERPRISES, INC.,
and LOUIS F. WARD, Individually,

Defendants

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OBJECTION AND RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO COMPEL THE DEPOSITIONS OF PLAINTIFF AND NON-PARTY WITNESS ESTELE BOURQUE, AND FOR SANCTIONS

## PLAINTIFF'S OBJECTION TO AN ORDER COMPELLING THE COMPLETION OF HER DEPOSITION

As set forth in Defendants' Memorandum, Plaintiff's deposition commenced at an agreed upon time and date, i.e., July 6, 2006, at 11:00 a.m. Prior to the commencement of this deposition, in response to Defendants' Request for Production of Documents, Plaintiff provided to Defendant medical reports from a number of physicians who had or are treating Plaintiff for several serious medical conditions, as well as reports from two psychiatrists who have examined Plaintiff as part of her application for Social Security disability benefits.[1] Defendants were also advised, during the first day of Plaintiff's deposition, that these medical conditions have recently led to the granting of her

[1] These records were produced to Defendants under the terms of a stipulated confidentiality agreement and are therefore not reproduced here. Plaintiff will make them available to the Court, under seal, if the Court deems it necessary.

application for Social Security disability payments. Consequently, Defendants knew, on July 6, 2006, that Plaintiff has well-documented medical conditions that substantially limit her activities and that may impact her behavior. On July 6, 2006, Defendants, in accordance with their own Memorandum, deposed Plaintiff from 11:00 a.m. until 1 p.m. and then requested a short lunch break. Defendants' Memorandum, page 8. Defendants resumed Plaintiff's deposition at 1:30 p.m. Plaintiff did consult with counsel outside of the deposition on approximately two occasions thereafter. At 3:00 p.m., it became clear that Plaintiff was very fatigued and was having difficulty concentrating. She indicated that she had met with her own counsel prior to the deposition for at least two hours, and that she was unable to continue. At that point, by Defendants' own estimation, Plaintiff had been deposed for at least three hours, not including breaks to consult with counsel, which took les than one-half hour. Before leaving the deposition, the parties agreed that Plaintiff's deposition would resume on July 11, 2006. July 11 was chosen because Defendants had already scheduled another deposition of a non-party witness that morning, and would therefore already have a stenographer and counsel would already be in Providence.

On July 11, 2006, Plaintiff arrived for her deposition just as counsel had taken a lunch break. Plaintiff had been delayed because of traffic on Allens Avenue in Providence. Plaintiff, knowing she was going to be late, attempted to notify her counsel by leaving a message with counsel's assistant. When Plaintiff arrived, approximately fifteen minutes late, counsel for Defendants was purchasing lunch, and Plaintiff's counsel did the same and took a few minutes to speak with Plaintiff before returning to the conference room where the deposition was to be conducted. In fact, counsel for Plaintiff did not even

finish her lunch before bringing her client upstairs.[2] Plaintiff was not feeling well on July 11, and the tone of the deposition reflected her discomfort. Plaintiff became offended and upset on at least one occasion and took a break in order to calm herself. On another occasion, when she responded to a question indicating that Defendant Louis Ward had slammed a drawer on one of her fingers, breaking it, she was then asked which finger and indicated the middle finger on one of her hands by raising that finger. Defendants' counsel appeared to take offense by Plaintiff's response.

Plaintiff had called one of her treating physicians prior to resuming her deposition on July 11 in order to alert him that she might require written documentation from him if she was unable to complete her deposition because of pain. This precautionary measure was completely reasonable, given the fact that Plaintiff had had a difficult physical therapy session the day before and was in a great deal of pain, and, on July 6, Defendants' counsel had attempted to insist upon a guarantee that Plaintiff would be able to conclude her deposition when it resumed on July 11.[3] At approximately 4:00 p.m., Plaintiff did call Dr. Lentrichia, asked in the presence of opposing counsel and the stenographer for the letter she had requested, and asked for a facsimile number for John Doran, one of the local counsel in this case. Plaintiff's attorney read the facsimile number from one of Defendants' pleadings. The parties then waited, at the request of Defendants' counsel, for Dr. Lentrichia's letter. When it did not arrive, the parties agreed to resume Plaintiff's

[2] It is the recollection of Plaintiff's counsel that Defendants' counsel was just finishing lunch when Plaintiff and her counsel returned to the conference room to resume Plaintiff's deposition.

[3] In response to Defendants' attempts to secure Plaintiff's commitment to concluding her deposition, Plaintiff indicated that she would try her best but was unable to make such a commitment.

deposition on July 17, 2006, at 10:00 a.m..[4] Plaintiff's counsel suggested this date because another deposition in this case had been noticed for 1:00 p.m. on the same day; therefore, Defendants' counsel was already planning to be in Providence on that day.

After separating on July 11, the only communication between Plaintiff's counsel's office and Defendants' counsel's office concerned where the two depositions would take place on July 17 and who would obtain the stenographer. Counsel had no direct communications other than a voice mail message received by Plaintiff's counsel when she arrived at her office on the afternoon of July 13, at the same time she received copies of Defendants' Emergency Motion and the accompanying Memorandum. *At no time did Plaintiff indicate to Defendants that she would not appear at the agreed time and place on July 17 to resume her deposition.*

By their own calculations, Plaintiff was deposed on July 11 for at least two hours, not including breaks. On July 17 Plaintiff appeared at 9:30 a.m. and was deposed without break until approximately 12:10 p.m. Defendants have now deposed Plaintiff for at least seven and one-half hours. Yet, at the conclusion of her deposition on July 17, Defendants' indicated that they wish to resume her deposition once again after they receive documents relating to her applications for Social Security disability payments, which she has produced in part and is attempting to collect. Plaintiff objects to any order compelling further deposition testimony in light of the foregoing.

---

[4] The facsimile number given to Dr. Lentrichia had been incorrectly typed on the pleading. Dr. Lentrichia did fax a letter to Plaintiff's counsel at approximately 6:00 p.m., and Plaintiff's counsel in turn faxed it to Defendants' counsel. A copy of Dr. Lentrichia's medical letter will be provided to the court if the court feels it is needed, subject to the parties' confidentiality agreement.

## PLAINTIFF'S OBJECTION TO AN ORDER COMPELLING HER TO PAY ATTORNEYS' FEES FOR THE PREPARATION AND COMPLETION OF HER DEPOSITION

As the aforementioned recitation of facts demonstrates, the within motion seeking an order compelling Plaintiff to resume and complete her deposition on July 17 was premature and unnecessary. Had Defendants asked Plaintiff to resume her deposition in the courthouse at 9:30 a.m. rather than resuming it in an office at 10:00 a.m., Plaintiff would have agreed. The date and time for the resumption of Plaintiff's deposition had been agreed to in advance and had been chosen to eliminate the need for a separate trip from Boston to Providence for Defendants' counsel. In fact, on both second and third days of Plaintiff's deposition, the dates had been chosen because other depositions were also scheduled in this case. Presumably, Defendants would have prepared for Plaintiff's deposition in any case. For all of these reasons, attorneys' fees are not warranted under F.R.C.P. 37(a)(4).

## PLAINTIFF'S RESPONSE TO THE REQUEST FOR AN ORDER COMPELLING THE DEPOSITION OF A NON-PARTY WITNESS, ESTELLE BOURKE

Estelle Bourke met Plaintiff, Allyn Reynolds, after Allyn Reynolds had been fired by Defendant Fluor. They had not worked together and had not known each other until another employee who had previously worked for Fluor had suggested that Plaintiff contact Mrs. Bourke because the harassment and hostile work environment that she had experienced at Fluor were similar to the harassment and hostile work environment that Plaintiff experienced. Estelle Bourke has not worked for Fluor since 2002 and has never filed a complaint of discrimination as a result of anything that happened to her at Fluor. She does, however, substantiate that she experienced severe and pervasive sexual

harassment while she was working at Fluor. Plaintiff expects that Estelle Bourke will be an important witness in her case against Fluor.

When Estelle Bourke was noticed for her deposition, she apparently advised Defendants' counsel that she has a serious medical condition, is presently undergoing chemotherapy, and is not feeling well. She therefore asked that her deposition be conducted at her home, and Defendants complied. When the parties and the stenographer arrived at Mrs. Bourke's home, she had set out glasses of ice water for everyone and was quite hospitable. It became clear, early in the deposition, that she was unfamiliar with depositions generally and with the procedures relating to depositions. She testified that she had not spoken to anyone in preparation for her deposition, therefore it is reasonable to assume that she was unprepared for many questions that related to her entire background and personal history, rather than her work history at Fluor. She testified that she had never been deposed before. Tr. Page 14. Nevertheless, she did her best to remember events going back to her teenage years, and even looked up her license as a certified nurse assistant at one point. Unfortunately, however, the tone of this deposition was one of cross-examination, and as Mrs. Bourke was cross-examined on her need for the job at Fluor, why she quit school at the age of 16 in the eighth grade, and who was supporting her and her children prior to her employment at Fluor, she became increasingly and not surprisingly defensive. Ultimately, the deposition deteriorated when Defendants' counsel interrupted the deponent by the following: "Why don't you wait until I have a question for you and answer those. You can't just keep talking on and on." Tr. Page 56. Shortly thereafter, Mrs. Bourke stated, "I don't want to continue in this frame." Tr., page 59. The deposition was then suspended.

Plaintiff does not object to an order compelling Mrs. Bourke's deposition in this case; however, Plaintiff is concerned that Mrs. Bourke's status as a non-party witness who is not represented and who is ill be respected. Accordingly, Plaintiff seeks an order for the completion of Mrs. Bourke's deposition at a location and at a time or times that are consistent with her medical needs and the possible need for intervention by this Court. Surely, it is in the best interest of all parties to obtain from Mrs. Bourke, as from other non-party witnesses, all of the information and evidence that is relevant to this case.

Respectfully submitted,

Plaintiff, Allyn Reynolds,
By and through her attorney,

Sandra A Lanni

Sandra A. Lanni
Bar No. 2147
Suite 20D, 33 College Hill Rd.
Warwick, Rhode Island 02886
401-822-1800
Facsimile: 401-822-1879
E-mail: slanni@collegehill.necoxmail.com

CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2006, a true copy of the within document was served by facsimile and first class mail to:

Windy L. Rosebush and Timothy P. VanDyck
Edwards Angell Palmer & Dodge LLP
111 Huntington Ave.
Boston, MA 02199

By facsimile and hand delivery to:
John D. Doran and Mark Pogue

Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903

By hand delivery to:
Estelle Bourke
93 Matteson Rd.
Hope, RI 02831

Sandra P Lanni